**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:

       Michael Maidan,
       dba Grand Avenue Building II, LLC,         Chapter 11
       dba East End Ventures LLC,
       dba 1907 Harrison Realty LLC,         Case No.: 8-19-77027-LAS
       dba 550 Metropolitan LLC,
       dba 62 Grand Ave LLC

           Debtor.
----------------------------------------------------------------x
ERIC HUEBSCHER, AS LITIGATION
TRUSTEE AND CO-LIQUIDATOR FOR
EAST END VENTURES, LLC, EAST END
VENTURES II LLC, AND EAST END
VENTURES III LLC, and ALEXANDER
TALEL, TEMPORARY ADMINISTRATOR
OF THE ESTATE OF EMIL TALEL, as COLIQUIDATOR
for EAST END VENTURES
LLC, EAST END VENTURES II LLC, and         Adv. Proc. No. 8-23-08017-LAS
EAST END VENTURES III LLC,

           Plaintiff,

v.

JAY BIALSKY, SAG HARBOR
DEVELOPMENT HOLDINGS LLC, JAB SH
HOLDINGS LLC, AND JAB 2 WEST
WATER STREET LLC,

           Defendants.
----------------------------------------------------------------x

## <u>MEMORANDUM DECISION AND ORDER ON TRUSTEE'S<br>MOTION FOR ORDER OF ATTACHMENT</u>

       Before the Court is the motion (the "Motion" or "Mot.") [Dkt. No. 48][1] filed by Plaintiff

Eric Huebscher (the "Trustee"), the litigation trustee under the confirmed plan in the above-

captioned chapter 11 case of Michael Maidan (the "Debtor") and court-appointed co-liquidator

---

[1] Unless otherwise stated, all docket references to the adversary proceeding are cited as "[Dkt. No. __ ]" and all docket references to the related bankruptcy case of the Debtor, Case No. 8-19-77027-LAS, are cited as "[Bankr. Dkt. No. __ ]."

of East End Ventures LLC, East End Ventures II LLC, and East End Ventures III LLC (collectively, "East End Ventures"), and joined by Intervening Plaintiff Alexander Talel ("Intervening Plaintiff" and, together with the Trustee, "Plaintiffs") as administrator of the estate of Emil Talel and co-liquidator of East End Ventures. [Dkt. No. 54.][2]

In the Motion, the Trustee seeks entry of an order of attachment, pursuant to CPLR § 6212(a) and CPLR § 6201(3), of assets held in a Capital One bank account with number ending 0743 (the "0743 Account") and any and all other funds belonging to Jay Bialsky ("Bialsky"), Sag Harbor Development Holdings LLC ("Sag Harbor" or the "Company"), JAB SH Holdings LLC ("JAB"), and JAB 2 West Water Street LLC ("JAB 2," and, together with Bialsky, Sag Harbor, and JAB, "Defendants") in this District, in the amount of not less than $26,121,525, plus prejudgment interest. Defendants filed a timely written opposition to the Motion (the "Opposition" or "Opp.") [Dkt. No. 51], and the Trustee timely filed a reply (the "Reply") [Dkt. No. 52] in support of the Motion. The Court held an evidentiary hearing on the Motion on December 11, 2023 (the "December 11 Hearing").

The Court has carefully considered the arguments and submissions of the parties, and, for the following reasons, the Trustee's Motion is denied.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the

---

[2] Intervening Plaintiff filed the joinder at 3:51 p.m. on November 29, 2023—the afternoon before the hearing scheduled for November 30, 2023. At the November 30 Hearing (as defined herein), Defendants objected to the Court's consideration of the untimely joinder to which Defendants did not have the opportunity to respond. *See* Nov. 30 Hear'g Tr. at 41:8-14. The Court has discretion to consider untimely filings. *See, e.g., Laufer v. Jaral Riverhead Corp.*, No. 20CV02680DGJMW, 2021 WL 9182913, at *6 (E.D.N.Y. July 27, 2021) (considering late-filed motion on the merits where, among other things, there was a "relatively short filing delay" and defendant would not be prejudiced). While Intervening Plaintiff's joinder was untimely, the Court will exercise its discretion to consider the arguments therein.

Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

## BACKGROUND

### I.    SAG HARBOR REAL ESTATE DEVELOPMENT PROJECT

Debtor was a real estate developer who did business as the sole member or owner of, or held financial interests in, several limited liability companies, including East End Ventures.[3] Mot. at 4. Debtor owned 50% of the membership interests of East End Ventures; the other 50% was held by the estate of Emil Talel, represented by its administrator, Alexander Talel, as successor executor to former executor Bernard Jaffe. *Id.* Defendant Bialsky has been in the business of buying, selling, and developing real estate in the Hamptons and surrounding area since 1994. Opp. at 5. Bialsky's construction company, Chateau Construction, LLC ("Chateau"), has constructed over thirty high-end residential homes and commercial properties during this period. *Id.* (citing Bialsky Decl. ¶ 1).

East End Ventures and Defendant JAB[4] are members of Sag Harbor—a real estate venture established for the purpose of developing residential properties in the Village of Sag Harbor (the "Village"). The properties in the Village consist of four adjoining waterfront parcels—three parcels on Ferry Road ("Ferry Road") and one parcel on West Water Street ("2 West Water Street").[5] Opp. at 5. Sag Harbor, East End Ventures, and JAB entered into the Amended and Restated Limited Liability Company Operating Agreement of Sag Harbor Development Holdings LLC (the "Sag Harbor Operating Agreement") on April 19, 2018.

---

[3] East End Ventures is currently in dissolution, and the Trustee and Intervening Plaintiff have been duly appointed by this Court as co-liquidators to liquidate and distribute the assets of East End Ventures. Mot. at 4-5.

[4] Bialsky formed JAB, a single member LLC solely owned by him, for the purpose of taking ownership of his interest in Sag Harbor. Opp. at 9.

[5] Defendant JAB 2 is the wholly owned subsidiary of Sag Harbor and the title holder of the 2 West Water Street property. Opp. at 15.

Debtor and Emil Talel, through their shared ownership of East End Ventures, held a 40% interest in Sag Harbor; Bialsky held the remaining 60% interest in Sag Harbor. Mot. at 2. Section 4.1 of the Sag Harbor Operating Agreement establishes Bialsky as the Manager of the Company, and Section 4.2 sets forth the powers of the Manager. Operating Agreement §§ 4.1, 4.2. Section 7.3 governs distributions to Members of the Company and sets forth a waterfall of payments in connection therewith. *Id.* § 7.3. Section 7.8 and corresponding Exhibit B set forth two buyout options—Option A and Option B—that the Manager may elect to exercise. *Id.* § 7.8.

## II.    DEBTOR'S CHAPTER 11 CASE

On October 11, 2019, Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.[6] Mot. at 4; [Bankr. Dkt. No. 1]. Debtor filed an amended disclosure statement (the "Amended Disclosure Statement") and plan (the "Amended Plan") on January 14, 2021. [Bankr. Dkt. No. 135, 136.] The Court entered an order confirming the Amended Plan (the "Confirmation Order") on March 17, 2021. [Bankr. Dkt. No. 149.]

The Amended Plan, among other things, (i) establishes a litigation trust (the "Litigation Trust") for the benefit of the holders of Class 4 (General Unsecured) Claims, (ii) provides for the vesting of the Debtor's Causes of Action (as defined in the Amended Plan) in the Litigation Trust as of the Effective Date, (iii) provides that the Trustee of the Litigation Trust has absolute discretion to determine whether to bring, settle, release, compromise or enforce such Causes of Action, and (iv) provides that the Trustee has the authority to pursue such litigation claims in accordance with the best interests of the Litigation Trust. [*See* Bankr. Dkt. No. 136, Art. XI, 11.1]; *see also* Mot. at 5. The Confirmation Order approved the retention of the Trustee as the Litigation Trustee of the Litigation Trust. [*See* Bankr. Dkt. No. 149 ¶

---

[6] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

4]; *see also* Mot. at 5. The Effective Date under the Amended Plan occurred on or around March 18, 2021. [*See* Bankr. Dkt. No. 136, Art. I, 1.26 (defining the "Effective Date" as the first Business Day occurring after the Confirmation Order becomes a Final Order")]; *see also* Mot. at 5.

On May 19, 2021, the Court entered an order modifying Debtor's Amended Plan pursuant to 11 U.S.C. § 1127(b) [Bankr. Dkt. No. 166] (the "Plan Modification Order"), which appointed the Trustee (i) as the Distribution Agent and the Disbursing Agent for Class 4 (General Unsecured) Claims and (ii) the Debtor's sole administrator and representative of the Debtor's estate pursuant to Section 1.6 of the Litigation Trust Agreement with respect to all assets to be sold or liquidated pursuant to the Plan. [*See* Bankr. Dkt. No. 166 at 1-2]; *see also* Mot. at 5.

## III.    THE ADVERSARY PROCEEDING

The Trustee commenced this adversary proceeding on March 8, 2023. [Dkt. No. 1.] In the complaint, the Trustee brings eight causes of action and alleges that Bialsky and JAB breached obligations to East End Ventures in connection with the Sag Harbor project by, *inter alia*: (i) failing to provide an accounting to Sag Harbor's minority partners; (ii) refusing to grant access to Sag Harbor's books and records to either the Trustee or to Talel's personal representative; and (iii) making distributions out of Sag Harbor to Bialsky directly or to bank accounts controlled by Bialsky (the "Challenged Distributions") without establishing Bialsky's entitlement to the funds, and without first funding a purported "minimum guaranteed payment" and other amounts that, according to the Trustee, are due to East End Ventures under the "member buyout" option Bialsky exercised pursuant to Section 7.8 of the Sag Harbor Operating Agreement. [*See generally* Dkt. No. 1]; *see also* Mot. at 2-3. Defendants filed their answer to the Complaint on May 23, 2023. [Dkt. No. 14.]

## IV.    TRUSTEE'S MOTION SEEKING ORDER OF ATTACHMENT

On November 7, 2023, the Trustee filed the Motion and accompanying Huebscher Declaration. [Dkt. Nos. 48, 49.] In the Motion, the Trustee alleges, *inter alia*, that Bialsky has divested the Company of funds for his "personal benefit" in making the Challenged Distributions and that Bialsky has "failed to provide a sufficient accounting" of these transactions. Mot. at 1. The Trustee seeks to prevent Bialsky from rendering himself, as well as the entities he controls, judgment-proof before the Court rules on Defendants' liability in this action. *Id.* at 1-2. As such, the Trustee seeks entry of an order of attachment under New York law. The Trustee filed corrected exhibits to the Huebscher Declaration on November 9, 2023. [Dkt. No. 50.] On November 21, 2023, Defendants filed the Opposition, along with accompanying declarations and exhibits. [Dkt. No. 51.] The Trustee filed the Reply, as well as the Wickouski Declaration, on November 27, 2023. [Dkt. Nos. 52, 53.] Intervening Plaintiff filed a joinder to the Motion on November 29, 2023. [Dkt. No. 54.]

The Court held a hearing on November 30, 2023 (the "November 30 Hearing")[7], at which the Court inquired whether the parties intended to request an evidentiary hearing in connection with the Motion. Nov. 30 Hear'g Tr. at 48:22-51:24. The parties submitted letters

---

[7] At the November 30 Hearing, the Trustee requested, in the alternative, that the Court issue an asset-freezing injunction. *See* Nov. 30 Hear'g Tr. at 11:4-9, 17:12-20:25. Defendants objected to the request for alternative relief, maintaining that the request was not made in the Motion and, therefore, they did not have the opportunity to respond. *Id.* at 40:14-41:7. The Court agrees with Defendants. In the Motion, the Trustee merely cited § 105 and related case law regarding the power to issue asset-freezing orders, generally, without requesting that one be entered here or demonstrating that the elements required for this Court to issue an injunction were satisfied. Mot. at 13-14. Counsel for the Trustee raised and addressed these elements for the first time at the November 30 Hearing. *See* Nov. 30 Hear'g Tr. at 17:12-19:9. Therefore, the Court declines to consider the Trustee's request for alternative relief. *See, e.g., Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.*, No. 17 CIV. 7495 (JPC), 2021 WL 1199470, at *7 (S.D.N.Y. Mar. 30, 2021) (noting that plaintiff failed to raise theory in papers, instead waiting until oral argument, and that "[c]ourts are loath to accept such belated arguments"); *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 Civ. 2725 (LGS), 2015 WL 997699, at *3 (S.D.N.Y. Mar. 5, 2015) (concluding that the court need not consider the plaintiff's theory raised for the first time at oral argument because it was both "unwarranted and unfair to [d]efendant, which had no advance notice of [p]laintiff's new argument and no opportunity to brief its opposition").

in response to the Court's inquiry. [Dkt. Nos. 55, 56.][8] The Court entered an order scheduling an evidentiary hearing [Dkt. No. 58], which was held on December 11, 2023.

## LEGAL STANDARD

Rule 64 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7064, permits a federal court to issue an order of attachment in the manner provided by the law of the state in which the federal court sits. *See In re Hypnotic Taxi LLC*, 543 B.R. 365, 371 (Bankr. E.D.N.Y. 2016) (citing *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009)). As relevant here, New York law provides as follows:

> On a motion for an order of attachment, or for an order to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, that **there is a cause of action**, **that it is probable that the plaintiff will succeed on the merits**, **that one or more grounds for attachment provided in section 6201 exist**, and that **the amount demanded from the defendant exceeds all counterclaims known to the plaintiff**.

CPLR § 6212(a); *see also In re Hypnotic Taxi LLC*, 543 B.R. at 371. "To obtain an order of attachment, a plaintiff must demonstrate each of the four elements required by [CPLR § 6212(a)]." *See Green Tree Servicing LLC v. Christodoulakis*, No. 14-CV-2037SJF SIL, 2014 WL 5475514, at *5 (E.D.N.Y. Oct. 28, 2014).

---

[8] The parties also submitted letters concerning the potential applicability of CPLR § 4519, also known as the Dead Man's Statute, to preclude Bialsky's testimony concerning his conversations or agreements with Debtor or Intervening Plaintiff, both now deceased. [Dkt. Nos. 61, 63]; *see also* Reply at 5-6; Nov. 30 Hear'g Tr. at 42:7-10. The Court has determined that the Dead Man's Statute does not apply in connection with resolution of this Motion. New York courts have recognized that "[b]y its terms, CPLR [§] 4519 may not be asserted or waived *until the trial*." *See, e.g., Kuznitz v. Funk*, 187 A.D.3d 1006, 1008 (NY App. Div., 2d Dep't 2020) (emphasis added); *Phillips v. Joseph Kantor & Co.*, 31 N.Y.2d 307, 313, 291 N.E.2d 129, 132 (1972) ("New York's Dead Man's Statute by its terms makes testimony by an interested witness 'concerning a personal transaction or communication between the witness and the deceased' excludable only '(u)pon the trial of an action or the hearing upon the merits of a special proceeding' (CPLR 4519)."). This adversary proceeding has not yet reached trial on the merits and, therefore, the Dead Man's Statute cannot be invoked at this time.

Courts in this circuit have recognized that plaintiffs seeking an order of attachment bear a "heavy burden . . . because New York attachment statutes are construed strictly against those who see[k] to invoke the remedy." *See Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16CV3181MKBCLP, 2018 WL 1402239, at *4 (E.D.N.Y. Mar. 4, 2018), *report and recommendation adopted*, No. 16CV3181MKBCLP, 2018 WL 1401321 (E.D.N.Y. Mar. 20, 2018); *DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 ("Because attachment is a harsh remedy, these statutory factors must be strictly construed in favor of those against whom attachment is sought.") (internal citations omitted); *see also Keawsri v. Ramen-Ya Inc.*, No. 17CV2406LJLOTW, 2020 WL 4505571, at *6 (S.D.N.Y. Aug. 5, 2020) ("Because attachment is a harsh remedy, Plaintiffs' burden of proving a right to attachment is high and construed against those seeking attachment.").

## I.    STATUTORY REQUIREMENTS UNDER NEW YORK LAW

### A.  Cause of Action

Under CPLR § 6212(a), a plaintiff bears the burden of demonstrating the existence of a cause of action. *See, e.g.*, *Solomon v. Casamento*, No. CV-91-0147 (ADS), 1991 WL 41834, at *3-4 (E.D.N.Y. Feb. 27, 1991).

### B.  Probability of Success on the Merits

To establish probability of success on the merits under CPLR § 6212(a), a plaintiff must show that it is more likely than not that it will succeed on the merits of its claim. *See In re Hypnotic Taxi LLC*, 543 B.R. at 372–73 (citing *DLJ Mortgage Capital, Inc.*, 594 F. Supp. 2d at 319; *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)). This requires "proof stronger than that required to establish a prima facie case." *See In re Hypnotic Taxi LLC*, 543 B.R. at 372–73. However, in evaluating whether this standard has been met, a court must afford the plaintiff the benefit of all legitimate inferences than can be drawn in

plaintiff's favor. *Id.* (citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004); *Bank Leumi Trust Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y.1995)).

### C.  Grounds for Attachment Under CPLR § 6201

In the Motion, the Trustee cites CPLR § 6201(3), which provides as follows:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
>
> > 3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]

CPLR § 6201(3); *see DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 ("To establish the third element for attachment, the plaintiff must prove both that the defendant (1) has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of these acts; and (2) has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor."); *see also CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945912, at *10 (S.D.N.Y. June 24, 2016) (reciting the "more stringent requirements" of CPLR § 6201(3)).

For purposes of CPLR § 6201(3), "[r]emoval, assignment, or other disposition of property is not a sufficient ground for attachment." *See DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 (citations omitted); *Dafeng Hengwei Textile Co. v. Aceco Indus. & Com. Corp.*, 54 F. Supp. 3d 287, 293–94 (E.D.N.Y. 2014) ("It is well established in New York that the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment."). Therefore, "it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud." *See Bao v. Wang*, No. 19-CV-8062 (AEK), 2022

WL 704023, at *3 (S.D.N.Y. Mar. 9, 2022) (citing *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331 (2d Cir. 1983)). The Second Circuit has observed that "[f]raud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud." *Id.* (quoting *Brastex Corp.*, 702 F.2d at 331-32). In other words, "[i]t is not sufficient to submit affidavits containing allegations that merely raise suspicions of fraudulent intent; rather it must appear that such fraudulent intent really existed in the defendant's mind." *Id.* (quoting *JSC Foreign Econ. Ass'n Technostroyexport*, 306 F. Supp. 2d at 487).

Given that "direct evidence of an intent to defraud or frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances." *See Bao*, 2022 WL 704023, at *3; *see also CF 135 Flat LLC*, 2016 WL 5945912, at *10 ("Because '[f]raudulent intent is rarely susceptible to direct proof . . . courts have developed 'badges of fraud' to establish the requisite actual intent to defraud.'" (citing *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983)). In determining whether intent can be inferred, courts consider the following "badges of fraud":

(1) the lack or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
(6) the general chronology of the events and transactions under inquiry.

*See, e.g.*, *CF 135 Flat LLC*, 2016 WL 5945912, at *10.

### D. Amount Demanded from Defendant Exceeds All Known Counterclaims

In determining whether the counterclaims requirement is met, courts "examine only counterclaims that the plaintiff concedes are just." *See In re Hypnotic Taxi LLC*, 543 B.R. at

380–81 (citing *Bank Leumi Trust Co. of New York*, 892 F. Supp. at 482); *see also Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09–CIV–975 (PGG), 2009 WL 636952, at *3 (S.D.N.Y. Mar. 6, 2009) (holding that an affirmation that the amount demanded in a complaint exceeds all known counterclaims is sufficient for purposes of CPLR § 6212(a)).

Courts have recognized that "the existence of a pending counterclaim which is contested does not defeat an attachment." *See In re Hypnotic Taxi LLC*, 543 B.R. at 381 (citing *American Jerex Co. v. Universal Aluminum Extrusions, Inc.,* 340 F. Supp. 524, 529 (E.D.N.Y.1972)). "This is consistent with the principle that the Court should not reach the merits of a claim on a motion for attachment." *Id.* (citing *City of New York v. Citisource, Inc.*, 679 F. Supp. 393, 399 (S.D.N.Y. 1988)).

## II.    DEMONSTRATING NEED FOR ORDER OF ATTACHMENT AND EXERCISE OF COURT'S DISCRETION

Satisfaction of the statutory criteria does not guarantee that a court will issue an order of attachment. *See Musket Corp.*, 512 F. Supp. 2d at 160 (S.D.N.Y. 2007); *see also In re Hypnotic Taxi LLC*, 543 B.R. at 371 ("CPLR [§] 6201 provides that an order of attachment 'may' be granted, and for this reason, courts have held that fulfillment of the requirements of [CPLR §] 6201 is a necessary but not a sufficient condition for granting an order of attachment."). Courts have noted that "[t]he remedy of attachment is recognized to be harsh and extraordinary; therefore, even if a plaintiff satisfies the statutory criteria, the issuance of this relief is discretionary, and the Court must exercise care in its application." *See, e.g.*, *Green Tree Servicing LLC*, 2014 WL 5475514, at *5 (quoting *Bank of China, N.Y. Branch v. NBM LLC*, 192 F.Supp.2d 183 186 (S.D.N.Y. 2002)).

Courts in this circuit have recognized that, "[i]n addition [to satisfying the statutory criteria], it is necessary to show there is a need for the order of attachment." *See In re*

*Hypnotic Taxi LLC*, 543 B.R. at 371; *see also Adler v. Solar Power, Inc.*, No. 16 CV 1635-LLS-GWG, 2019 WL 2210661, at *3 (S.D.N.Y. May 22, 2019) (observing that an order of attachment "should issue only upon a showing that drastic action is required for security purposes") (citing *Bank of China*, 192 F. Supp. 2d at 188). The Second Circuit has held that courts presented with an application for an order of attachment must determine *not only* "whether a statutory ground for attachment exists" and "whether the applicant has established a likelihood of success on the merits," *but also* "whether the remedy is needed to secure payment or obtain jurisdiction." *See Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) ("The legislative history further supports the view that a motion court's 'discretion' to grant an application depends on its determination that a plaintiff both satisfies the statutory requirements and establishes the need for an attachment. . . . Similarly, although treatises on New York practice describe attachment as a 'discretionary' remedy to which a party has no statutory right, *they appear to mean that motion courts may deny attachment for lack of need even though the plaintiff has established a ground under Section 6201 and satisfied the requirements of Section 6212*.") (emphasis added).

Therefore, courts have discretion "to the extent that these determinations require weighing of evidence and also in balancing competing considerations." *See Cap. Ventures Int'l*, 443 F.3d at 222. "Where, however, a statutory ground for attachment exists *and* both need and likelihood of success are established, [a court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Id.* (emphasis added); *see also Gov't Emps. Ins. Co. v. Grody*, No. 22CV06187KAMPK, 2023 WL 5979206, at *3 (E.D.N.Y. July 24, 2023), *report and recommendation adopted*, No. 22-CV-6187 (KAM)(PK), 2023 WL 6307340 (E.D.N.Y. Sept. 28, 2023) (same).

## DISCUSSION

As the Court recognized during the November 30 and December 11 Hearings, (i) the parties do not dispute that two of the four required elements to obtain an order of attachment are satisfied, to wit, this is an action for a money judgment and there are no counterclaims asserted by Defendants, and (ii) the dispute centers on the remaining two elements necessary to obtain an order of attachment, i.e., satisfaction of CPLR § 6201(3), including the critical question of whether Plaintiffs have provided evidence of an intent to defraud, and whether Plaintiffs have established there is a likelihood of success on the merits. *See* Nov. 30 Hear'g Tr. at 8:22-9:4; Dec. 11 Hear'g Tr. at 9:18-24.

Because the Court concludes that the Trustee has failed to satisfy the statutory grounds for attachment set forth in CPLR § 6201(3), the Court need not address whether the Trustee has demonstrated a likelihood of success on the merits. For the reasons set forth below, the Motion is denied.

## I.    THE TRUSTEE HAS FAILED TO SATISFY THE STATUTORY GROUNDS FOR ATTACHMENT SET FORTH IN CPLR § 6201(3).

### A.  The Trustee has failed to show that Defendants took, or were about to take, any of the enumerated actions in CPLR § 6201(3).

CPLR § 6201(3) requires the Trustee to show that Bialsky "has assigned, disposed of, encumbered or secreted property, or removed it from the state," or that Bialsky "is about to do any of these acts." *See* CPLR § 6201(3); *see also DLJ Mortg. Cap., Inc.*, 594 F. Supp. at 319. Courts in the Second Circuit have held that "this language is to be construed strictly" and have "limit[ed] these terms to their plain meaning and decline[d] to add any judicial gloss on the statutory language." *See, e.g., Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 380, 383–84 (S.D.N.Y. 2001).

Defendants correctly highlight that the Trustee has failed to carry his burden. *See* Opp. at 23-24. The Trustee has not alleged that the funds have been "assigned" or "encumbered" in any way. *See id.*; *see also Buy This, Inc.*, 178 F. Supp. 2d at 383–84. The location of the funds is not a "secret," as they are known to have been transferred to the bank accounts identified through discovery—and identified by Defendants themselves in related correspondence—nor have there been any allegations that the funds have been otherwise "disposed of." *See* Mot. at 11-12; Opp. at 24, 25; Nov. 30 Hear'g Tr. at 39:9-19; *see also Buy This*, 178 F. Supp. 2d at 383–84; *Greuner Med. of NJ PC v. Brown*, No. 17CV04569AMDPKC, 2017 WL 3841856, at *3 (E.D.N.Y. Sept. 1, 2017) (denying motion for attachment and observing that, where there was no information as to whether checks had been cashed or proceeds had been spent by the defendant, the proceeds "may not have been converted and/or dissipated" and this finding was "significant in determining whether Defendant intends to defraud Plaintiffs"). Finally, the Trustee has not offered any evidence that the funds have been, or are soon to be, removed from the state. *See* Opp. at 23-24 ("[T]his is not an instance in which Bialsky, who has been a continuous resident of New York since 1991, has absconded from the jurisdiction with Sag Harbor's purported assets.").

### B. The Trustee cannot show that Defendants had the intent to defraud creditors or to frustrate a judgment in the Trustee's favor.

To sustain an action based on CPLR § 6201(3), the Trustee must show not only that Bialsky assigned, disposed of, encumbered or secreted property, but also that such actions were taken with intent to defraud creditors[9] or frustrate the enforcement of a judgment. *See*

---

[9] The Court notes an additional issue with the Trustee's argument. It is not clear that East End Ventures is a "creditor" for purposes of CPLR § 6201(3). East End Ventures is merely the minority member of Sag Harbor; any monies to which East End Ventures is purportedly entitled under the Sag Harbor Operating Agreement would be the result of its equity position in the Company. Even if, however, the Court were to accept the Trustee's conclusory argument that East End Ventures is a creditor, the Trustee still fails to meet his burden because he failed to establish the requisite fraudulent intent.

*NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138 (NGG)(PK), 2016 WL 11469718, at *4 (E.D.N.Y. Aug. 22, 2016). Even if the Trustee met his burden with respect to showing that Bialsky took the statutorily enumerated actions concerning the funds at issue, the Trustee has nevertheless failed to sustain his burden as to the requisite fraudulent intent.

Courts have recognized that "[a] writ of attachment is properly denied where defendants have proffered an arguable legitimate reason for transferring [assets]." *See, e.g.*, *Chartwell*, 2018 WL 1402239, at *6 (internal quotations omitted); *Man Wei Shiu v. New Peking Taste Inc.*, No. 11-CV-1175 NGG, 2013 WL 4046382, at *13 (E.D.N.Y. Mar. 14, 2013), *report and recommendation adopted as modified*, No. 11-CV-1175 NGG RLM, 2013 WL 2351370 (E.D.N.Y. May 28, 2013), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. L. Off. P.C.*, 559 F. App'x 105 (2d Cir. 2014) (declining to infer fraudulent intent where "defendants have proffered an arguably legitimate reason for transferring the business"); *Ames v. Clifford*, 863 F. Supp. 175, 178–79 (S.D.N.Y. 1994) (observing that party "provided reasonable explanations" for all purported transfers at issue); *see also Wen v. CT & TC Corp.*, No. CV 16-4214, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017) (denying motion for order of attachment where plaintiffs failed to provide evidence of defendants' intent to defraud in connection with sale of restaurant, and, to the contrary, defendant "put forth evidence of non-fraudulent intent that pre-date[d] the filing of the complaint" and "further provided unchallenged testimony that personal health considerations and business concerns motivated his decision to sell").

Here, Defendants have proffered an "arguably legitimate reason" for Bialsky's transfers from Sag Harbor: Bialsky's reliance on his interpretation of certain governing provisions of the Sag Harbor Operating Agreement, which purportedly permit the Challenged Distributions. Defendants cite Section 4.2, which provides that "[t]he business, affairs and

assets of the Company shall be managed, arranged and caused to be coordinated by the Manager, who shall have, except as otherwise provided in this Agreement, *full, exclusive and complete discretion* with respect thereto." Operating Agreement § 4.2 (emphasis added); Opp. at 10 n.4. Section 4.2 sets forth the powers of the Manager, which include, among others, the power to "deposit, withdraw, invest, pay, retain and distribute the Company's funds in a manner consistent with the provisions of this Agreement." Operating Agreement § 4.2(ix); Dec. 11 Hear'g Tr. at 144:7-20.

Defendants also rely on Section 7.3 of the Sag Harbor Operating Agreement, which affords the Manager discretion in making distributions to Members and establishes the following waterfall with respect to the order of priority in which such distributions shall be made:

> The Manager may from time to time, in the discretion of the Manager, make Distributions to the Members. All Distributions shall be made to the Members in the following order [of] priority:
>
> **First:** to pay Manager Thirty-Five percent (35%) of the net proceeds of the sale of the Ferry Road lot to the Town of Southampton, but only after payment of 65% of such net proceeds to Mid First Bank;
>
> **Second:** to pay all interest, principal and other sums payable with respect to the balance of loans for acquisition and construction financing made to the subsidiaries of the Company;
>
> **Third:** Twelve percent (12%) preferred distribution on all Capital Contributions and guaranteed loans by JAB SH HOLDINGS LLC or Jay Bialsky which shall include the initial loan of Seven Hundred Fifty Thousand Dollars ($750,000) of which Two Hundred Fifty Thousand Dollars ($250,000) has been advanced by the date hereof;
>
> **Fourth:** to pay the Capital Contribution by JAB SH HOLDINGS LLC to the Company; and
>
> **Fifth:** to each Member in proportion to such Member's Membership Interest.

Operating Agreement § 7.3; *see also id.* § 1.1(f) (defining "Distribution" to mean "any cash and other property paid to a Member by the Company from the operations of the Company").

Defendants maintain that "the decision and timing of [the transfers] was expressly within Bialsky's discretion as Manager" under Section 7.3. Opp. at 25. In the Opposition, Defendants walk through each level of priority and explain how, under Bialsky's interpretation, the Challenged Distributions do not violate the waterfall. *See* Opp. at 35-36.

Offering a conflicting interpretation of the Sag Harbor Operating Agreement[10], the Trustee expressly acknowledges that this case turns on an issue of contract interpretation. *See* Nov. 30 Hear'g Tr. at 10:3-19 (wherein counsel for the Trustee observes "really at the heart of this dispute is the interpretation of the Sag Harbor [O]perating [A]greement. . . . I think just setting the table at the outset I would say that the . . . difference in interpretation of that agreement while this case has been pending and for a period of time beforehand has resulted in the distribution of millions of dollars to the manager Jay Bialsky which he asserts is within his discretion, but it's based on an interpretation of a Sag Harbor operating agreement that is very much at the heart of this dispute[.]"); *see also* Dec. 11 Hear'g Tr. at (wherein the Trustee testifies on recross examination that his "interpretation . . . is slightly different" and "that's one of the reasons why we're here today.") In doing so, the Trustee appears to concede that it is not an "intent to defraud" that motivated the Challenged Distributions, but rather, reliance on an—albeit disputed—interpretation of the Sag Harbor Operating Agreement.

The Court declines to rule on the interpretation of the Sag Harbor Operating Agreement in resolving this Motion. That is an issue for trial. Rather, the Court concludes, for purposes

---

[10] The Trustee reads Option A under Section 7.8 and Exhibit B of the Sag Harbor Operating Agreement—which Bialsky has elected—to entitle East End Ventures to a "guaranteed minimum payment" of $7.2 million and a final amount that is 45% of the profits from the developed units. Mot. at 7. The Trustee maintains that East End Ventures' entitlement to this payment "necessarily supersedes" the waterfall provision set forth in Section 7.3, but even if Section 7.3 were to apply, the Challenged Distributions nevertheless fail to comply with the waterfall. *Id.* at 8-9; Reply at 6-7. Defendants, on the other hand, maintain that there is no "guaranteed minimum payment" and that the Challenged Distributions comply with the provisions of the Sag Harbor Operating Agreement. *See generally* Opp. at 31-36.

of resolving the Motion, that Defendants have "put forth evidence of non-fraudulent intent" as to defeat Plaintiffs' request for an order of attachment. *See generally Wen v. CT & TC Corp.*, No. CV 16-4214, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017).

The Trustee's reliance on the badges of fraud does not alter this analysis. Critically, the Trustee readily admits that "the documents obtained by the Trustee do not indicate that Sag Harbor became insolvent as a result of" the Challenged Distributions. Mot. at 22. Furthermore, two of the badges—whether there was gross inadequacy of consideration[11] and whether the transfers were made outside of the ordinary course of business[12]—do not move the needle in the Trustee's favor absent a determination whether the Trustee's interpretation of the Sag Harbor Operating Agreement is correct. *Id.* at 22-23. Again, that is an issue for trial and is subject to Defendants' counterargument that the Challenged Distributions were authorized by the terms and conditions of the Sag Harbor Operating Agreement. In sum, the Trustee "presents nothing more than its suspicions as to why this money was transferred or the ultimate use of the money, and fails to show evidence of any 'badge of fraud' beyond the close relationship of the parties." *See Dafeng Hengwei Textile Co.*, 54 F. Supp. 3d at 295. In

---

[11] The Trustee's argument at the November 30 Hearing makes his position less clear—and the "gross inadequacy of consideration" badge less illustrative of fraudulent intent. Departing from the calculations set forth in the papers, counsel for the Trustee acknowledged at the hearing that "we have more information about what are the exact quantum of distributions that actually went out [to] Mr. Bialsky or at least as the Defendants claim" and "we would revise" some of the numbers in the Motion "based on information we gained subsequently[.]" *See* Nov. 30 Hear'g Tr. at 14:25-15:5. Counsel did not indicate how these numbers should be changed. Notably, counsel conceded that "[D]efendants have shown that perhaps Mr. Bialsky has put in some contributions at the same time that he's taken out distributions[.]" *Id.* at 15:10-13. This undermines the Trustee's position regarding gross inadequacy of consideration in connection with the Challenged Distributions. Counsel then attempted to shift the focus away from the Challenged Distributions, highlighting the fact that Bialsky is "taking one of the three units for his own property" and that *this* demonstrates the requisite "gross inadequacy of consideration." *Id.* at 15:13-21. However, the Trustee immediately caveated this observation with an express acknowledgement that the unit was subsequently "untransferred to Jay Bialsky" in April 2023. *Id.* at 15:22-16:3.

[12] The Trustee concedes that this badge only works in his favor if his interpretation of the Sag Harbor Operating Agreement is correct. *See* Mot. at 22-23 ("To the extent that Bialsky was not entitled to the Suspect Transfers, they cannot be considered to have been made in the ordinary course of business."); Nov. 30 Hear'g Tr. at 16:11-17 ("And one of the other badges of fraud is a questionable transfer not in the ordinary course of business. Obviously our interpretation of the Sag Harbor agreement . . . makes clear to us at least that these are not . . . transfers that are authorized by the Sag Harbor operating agreement[.]").

other words, the Trustee merely "seem[s] to suggest that the Court should piece together a picture of Defendants' intent to commit fraud" without providing sufficient evidentiary facts.[13] *See generally Bao*, 2022 WL 704023, at *5. Because Defendants have proffered an arguably legitimate reason for taking the Challenged Distributions, the Trustee is unable to satisfy its burden of showing that the requisite fraudulent intent "really exist[ed] in the [Bialsky's] mind" in connection with the Challenged Distributions as to merit awarding an order of attachment. *See generally Bao*, 2022 WL 704023, at *3.

Additionally, Defendants highlight that the majority of the Challenged Distributions[14] occurred between February 5, 2019 and April 18, 2022—before the commencement of this adversary proceeding.[15]  *See* Opp. at 15; Nov. 30 Hear'g Tr. at 23:25-24:8 (wherein counsel for Defendants notes that "the bulk of those distributions was taken between February 5th, 2019 and April 18th, 2022"). The Trustee filed the complaint in this adversary proceeding on March 8, 2023. Because there was no potential judgment to frustrate at the time the transfers were made, the Trustee has not proffered evidence from which this Court may infer that such transfers were made to frustrate enforcement of judgment in the Trustee's favor for purposes

---

[13] At the December 11 Hearing, counsel for the Trustee introduced a line of questioning to advance a new theory regarding the Challenged Distributions: that Bialsky made improper contributions under Section 6.2(a) of the Sag Harbor Operating Agreement for the purpose of setting himself up to receive a 12% preferred return on his investment under Section 7.3. *See* Dec. 11 Hear'g Tr at 104:1-113:8. The Court inquired as to what evidence the Trustee has to support this theory, and counsel failed to identify any evidentiary facts in support thereof. *See id.* at 109:1-110:9.

[14] Defendants highlight that the only transfer outside this period—and after the adversary proceeding was commenced—was a $100,000 distribution on April 28, 2023 that followed a $500,000.00 capital contribution that Bialsky made to Sag Harbor on behalf JAB SH on February 27, 2023. *See* Opp. at 15; Nov. 30 Hear'g Tr. at 24:8-14 ("There was only one other distribution taken after that and that was a $100,000 distribution that was taken on April 28th, 2023 that followed a $500,000 contribution that Mr. Bialsky made two month[s] earlier. So by and large there have been no distributions taken by Mr. Bialsky for the last year and a half, other than that $100,0000 payment . . . earlier this year."). That one of the transfers was made after the complaint was filed does not alter the Court's conclusion. Plaintiffs have failed to demonstrate the requisite fraudulent intent with respect to all of the Challenged Distributions for the reasons stated herein.

[15] The Trustee disputes Defendants' representations regarding the Challenged Distributions at the November 11 Hearing, maintaining that "Bialsky's distributions to himself were not in the distant past, as Defendant claims." [Dkt. No. 55 at 2.] However, the Trustee expressly acknowledges that "[t]he bulk of these distributions were made most recently, between May 2021 and April 2022[.]" *Id.* The Court notes that this timeframe predates the commencement of this adversary proceeding.

of CPLR § 6201(3). *See Allstate Ins. Co. v. Levy*, No. CV-10-1652 FB VVP, 2010 WL 5665040, at *2 (E.D.N.Y. Dec. 29, 2010), *report and recommendation adopted*, No. 10-CV-1652 FB VVP, 2011 WL 318038 (E.D.N.Y. Feb. 1, 2011) (concluding that, where payments occurred before lawsuit was commenced, "they provide little, if any, evidence of an intent to frustrate the enforcement of any judgment that may be rendered in this case")[16]; *cf. Hawkins v. Zoegall*, No. 23-CV-4040(KAM)(JWM), 2023 WL 4106645, at *5 (E.D.N.Y. June 20, 2023) (noting that badges of fraud supported intent to defraud creditors or frustrate enforcement of judgment where new entity was formed twelve days after lawsuit was filed, new entity received funds almost two months after initiation of the lawsuit, and hundreds of thousands of dollars were transferred during the period in which the lawsuit was pending).

## II.    THE COURT NEED NOT ADDRESS WHETHER THE TRUSTEE HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

Because all four elements required for attachment under CPLR § 6201(3) must be satisfied, and because the Court finds that the Trustee has not satisfied the "fraudulent intent" element, the Court need not rule on whether the Trustee has shown a probability of

---

[16] This Court notes that Allstate appealed to the Second Circuit, arguing in relevant part that the district court erred in concluding that CPLR § 6201(3) can only be satisfied when the asset transfers at issue were performed *after* the initiation of litigation, or following the commencement of an investigation and/or criminal action, and thus failed to assess whether asset transfers that *predated* the initiation of suit were sufficient to establish a basis for attachment pursuant to CPLR § 6201(3). *See Allstate Ins. Co. v. Levy*, 478 F. App'x 688, 691 (2d Cir. 2012). The Second Circuit observed, generally, that "it is well-established under New York law that in determining whether a defendant has disposed of property with intent to defraud its creditors for the purpose of applying § 6201(3), courts may consider evidence of the defendant's fraudulent conduct predating the initiation of suit by the plaintiff." *Id.* (citing cases). The Second Circuit also highlighted that the district court "specifically noted that Allstate *correctly* stated the law in contending that a defendant's conduct prior to litigation and before investigation may demonstrate such a disposal of property for the purpose of § 6201(3)." *Id.* The Second Circuit ultimately dismissed Allstate's appeal for lack of subject-matter jurisdiction by summary order. *Id.* at 691-92.

The Second Circuit's observations in the *Allstate* appeal do not alter this Court's conclusion. CPLR § 6201(3) consists of two alternative prongs: "intent to defraud his creditors" or "intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor." CPLR § 6201(3). Here, the Court notes that there can be no "intent to frustrate a judgment," specifically, where there was no judgment on the horizon at the time—indeed, where the instant action was not filed until years *after* many of the transfers at issue were made. While this timeline does not foreclose the possibility that there could nevertheless be "intent to defraud creditors" under the CPLR (and, under *Allstate*, courts can look to conduct predating the action), the distributions at issue here, as well as Defendants' conduct before initiation of the instant action, do not exhibit the requisite intent to defraud creditors for the reasons set forth herein.

success on the merits of his claims.[17] *See, e.g.*, *NV Petrus SA*, 2016 WL 11469718, at *6; *see also Keawsri*, 2020 WL 4505571, at *6 ("Plaintiffs' motion is denied at this time because Plaintiffs have not shown that one or more grounds for attachment in CPLR [§] 6201 exist. Because the requirements for attachment are conjunctive, I need not analyze whether Plaintiffs are likely to succeed on the merits."); *Chartwell*, 2018 WL 1402239, at *9 ("Since Chartwell has failed to meet its burden of demonstrating that one of the grounds in § 6201 exists, the Court need not address the remaining three requirements of § 6212(a)[.]"); *Silverman v. Miranda*, 116 F.Supp.3d 289, 311 n.20 (S.D.N.Y. 2015) ("Because the Court finds Plaintiffs have not established that Defendants intentionally sought to frustrate the enforcement of a judgment by disposing of its assets, the Court does not need to address Plaintiffs' probability of success on the merits."); *Encore Credit Corp. v. LaMattina*, No. CV-05-5442 (CPS), 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006) ("I need not determine at this time whether plaintiff has established a cause of action against defendant Guli, whether plaintiff has a likelihood of success on the merits, and whether the amount demanded from defendant exceeds all counterclaims known to plaintiff because, for the reasons set forth below, I find that plaintiff has not established grounds for attachment."). Therefore, the Court declines to address this element here.

---

[17] The Court notes that, even if the Trustee had carried its burden as to all relevant statutory factors, the Trustee nevertheless failed to demonstrate the need for an order of attachment. *See, e.g.*, *Adler*, 2019 WL 2210661, at *4 (considering assets available to satisfy potential judgment in assessing need for order of attachment); *Burt Printing Co. v. Middle E. Media Corp.*, 80 F.R.D. 449, 451 (S.D.N.Y. 1978) (same). The Court has discretion to deny a motion seeking an order of attachment where need is not shown. *See In re Hypnotic Taxi LLC*, 543 B.R. at 371; *Cap. Ventures Int'l*, 443 F.3d at 222; *see also NV Petrus SA*, 2016 WL 11469718, at *4 n.5 ("Even if the plaintiff's cause of action clearly falls within one of the classes of actions in which attachment is available . . . the court must exercise its discretion in terms of whether the order furthers either of the functions that an attachment is designed to serve. Thus, if jurisdiction over the defendant can be secured without attaching property and there is no reason to believe that the defendant will not satisfy any judgment entered against the defendant, an order of attachment should be withheld.") (quoting Hon. Jack B. Weinstein, *et al.*, 12 New York Civil Practice: CPLR ¶ 6201.3 (2d ed. 2005)). Here, Defendants correctly note that the Trustee "has presented no evidence that Bialsky or Sag Harbor is or would be judgment proof absent an attachment." *See* Opp. at 25.

## **CONCLUSION**

For the reasons set forth above, the Trustee's Motion is denied.


So Ordered.



Dated: February 1, 2024
      Central Islip, New York

**Louis A. Scarcella**
**United States Bankruptcy Judge**